LEVIN H. CAMPBELL, Senior Circuit Judge, dissenting.
While my colleagues’ result is humanly appealing, I cannot agree with it. It seems to me to run counter to proper standards of legal analysis and to substitute judicial discretion for that conferred upon the Secretary of Labor. I would affirm the district court.
I.
Appellant complains that her employer violated the Family Medical Leave Act (FMLA or the Act) by refusing to grant leave so that she could look after her pregnant daughter. In her thirty-sixth week of pregnancy, the daughter had been placed on bed rest because of a pregnancy-induced hypertension. Because the district court found the daughter was not “disabled” — a threshold requirement for FMLA leave in order to care for an adult child, “disability” being defined in the Act’s regulations in terms of ADA criteria — the district court dismissed appellant’s FMLA claim. My colleagues now reverse that judgment. They do not suggest that, under ADA standards, appellant’s daughter was disabled, but rather they hold that the FMLA requires a more relaxed standard of disability than does the ADA — one with little or no durational requirements. I think my colleagues both misread the FMLA and improperly override the authority given by Congress to the Secretary of Labor to prescribe regulations in this area.
To explain, I begin with the words of the statute. In enacting the FMLA, Congress specifically distinguished between entitlements of leave to care for minor children and of leave to care for adult children. The Act broadly grants leave rights to employees “[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition,” 29 U.S.C. § 2612(a)(1)(C). However, the Act then proceeds to provide a limiting definition of who may be considered to be a son or a daughter: “[S]on or daughter” is defined as the employee’s child who is “(A) under 18 years of age; or (B) 18 years of age or older and incapable of self-care because of mental or physical disability.” 29 U.S.C. § 2911(12)(emphasis supplied). The statute’s clause (B) thus imposes a significant limitation upon the class of adult children for whose care parental leave is mandated. Leave is provided solely to care for those adult children fitting within the category of children who are “incapable of self-care because of ... disability.” Notably, the statute imposes no such disability limitation in respect to leaves to care for minor children, spouses and parents. While the majority brushes *106 aside as “weak” the above limitation pertaining to adult children only, the fact that it was crafted as part of the very definition of the class for whose care leaves may be granted accentuates its importance. Whether or not we like the limiting phrase in § 2911(12)(B), we cannot responsibly ignore or downplay it. See Massachusetts Ass’n of Health Maintenance Organization v. Ruthardt, 194 F.3d 176, 181 (1st Cir.1999) (“[A]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous.”)(internal quotation marks omitted).
The Senate Report relating the legislative history of the FMLA illuminates Congress’s reasons for inserting this unique provision, which limits leave to parents to care for their seriously ill adult children to only those children “incapable of self-care because of ... disability.” This legislative history deserves repeating, ante note 2, as it clarifies the critical issue in this appeal: the significance and meaning of the phrase “incapable of self care because of mental or physical disability.” The majority simply describes this history as “amorphous” and thereafter treats the Senate Report as essentially without import. Nevertheless, the Senate Report states:
The bill [FMLA] thus recognizes that in special circumstances, where a child has a mental or physical disability, a child’s need for parental care may not end when he or she reaches 18 years of age. In such circumstances, parents may continue to have an active role in caring for the son or daughter. An adult son or daughter who has a serious health condition and who is incapable of self-care because of a mental or physical disability presents the same compelling need for parental care as the child under 18 years of age with a serious health condition.
S.Rep. No. 103-3, at 22 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 24.
The most obvious and reasonable construction of the above quoted passage — a reading that the Secretary of Labor’s regulations faithfully mirror, infra — indicates that Congress wanted to restrict leave benefits for parents to care for their adult children 18 and older to only those special cases where because of some mental or physical disability the adult child is or remains especially dependent on the parent in the same ways minor children typically are dependent.[1] In other words, for the adult child to trigger leave rights, it is not enough that he or she be seriously ill; the child must also be “incapable of self- *107 care because of ... disability,” a factor Congress deemed essential to place the adult child within a special class deserving of parental care for FMLA leave purposes. The Senate Report explains that in such cases “a child’s need for parental care may not end [as presumably happens otherwise] when he or she reaches 18 years of age.... [And] parents may continue to have an active role in caring for the son or daughter.” Id. It is clear from this passage that Congress contemplated an adult child who is especially dependent over some period of time on parental care for physical or mental reasons.[2] This is in contrast to the typical scenario in which, at and after age 18, a child may be regarded as having achieved substantial independence and self-sufficiency so as to be able to live on her own, support herself, and be ministered to by others than her parents. By restricting parental leaves to uneman-cipated minor children and a restricted class of adult children who may still require some sort of on-going parental care, Congress was imbuing the word “disability” with a serious and severe consequence, one which, however, the majority simply overlooks in its assumption that the sole and overriding purpose of the FMLA is to provide a liberal leave policy in all instances.
For the above reasons, I believe that Congress’s intentions along the lines indicated are amply signaled both in the statutory language and the Senate Report. The FMLA, however, leaves to the Secretary of Labor a major role in the interpretation of Congress’s wishes, hence I turn next to the Secretary’s regulations. The FMLA provides that the “Secretary of Labor shall prescribe such regulations as are necessary to carry out ... this chapter....” 29 U.S.C. § 2654. In promulgating regulations to enforce congressional intent, including the difference in the statute between leave granted to care for minor children and leave granted to care for adult children, the Secretary of Labor has defined the relevant terms “incapable of self-care” and “physical or mental disability.” And, in so doing, the Secretary has construed the terms precisely in accord with the congressional intent one would glean from the construction of the statute and the Senate Report I have just set forth.
As the majority notes, with regard to the term “physical or mental disability,” instead of defining from scratch the term “disability” for the purposes of the FMLA, the Secretary has borrowed the statutory ADA definition as further refined in regulations issued by the EEOC pursuant to the ADA. The Secretary states in her FMLA regulations that
physical or mental disability means a physical or mental impairment that substantially limits one or more of the major life activities of an individual. [The ADA definition.] Regulations at 29 C.F.R. § 1630.2(h),(i), and (j), issued by the Equal Employment Opportunity Commission under the Americans with Disabilities Act ... define these terms.
29 C.F.R. § 825.113(c)(2)(2000)(emphasis supplied). The relevant ADA provision and EEOC regulations are undoubtedly restrictive in their scope with regard to the kinds and durations of impairments *108 that will qualify as disabilities.[3] Nonetheless, as already discussed above, Congress’s very purpose in using the term “disability” seems to have been to limit the class of adult children for whose benefit leave was mandated. The ADA and EEOC definitions achieve this task very reasonably. They effectuate congressional intent to differentiate between entitlement to leave to care for, on the one hand, a ■narrower class of adult children whose long-term afflictions limit major life activities, and, on the other hand, all seriously Ü1 minor children whether or not disabled.
And in cross-referencing to the ADA and to the EEOC regulations, the Secretary achieves advantages that would be lost were she to have defined the term “disability” by new and separate regulations tailored solely to the FMLA. By cross-referencing, the Secretary makes use of interpretations developed and being developed in another relevant on-going regulatory scheme, thereby achieving more precise standards in what — -given the vagueness of the term “disability” — could otherwise be a chaotic area of interpretation.
Given what Congress was attempting to accomplish by creating in the FMLA a narrower, more needy class of adult children, I see nothing wrong or unreasonable with the Secretary’s giving the FMLA term “disability” the exact same meaning as provided in the ADA and its interpretive regulations. The ADA pre-dates the FMLA and is perhaps the primary federal statute dealing with the subject of disability. Its incorporated concept of a relatively long-term physical or mental condition ties precisely into what the FMLA intended when separating out all adult children whose need for parental care has ended from those whose “parents may continue to have an active role” in their care. S.Rep. No. 103-3, at 22 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 24. Over time, the ADA definition has been refined by regulation and administrative and judicial precedent so that by now its meaning in many (or even most) situations has become relatively clear. The Secretary’s cross-reference to the ADA’s definition of “disability” with its concomitant history and administrative and judicial guidance makes it possible for employers, employees and tribunals interpreting the FMLA to refer to well-established coherent principles and precedent, providing predictability and clarity to a term “disability” that, by itself, is anything but plain.
Viewed this way, the Secretary’s borrowing of ADA and EEOC criteria to define “disability” under the FMLA makes eminent good sense. These criteria, it is true, will limit leave to parents whose sons or daughters suffer from more chronic, fairly long-term physical and mental handicaps. Borrowing and faithfully applying to the FMLA the ADA’s disability definition means that parental leaves will not be available in all situations where leaves, from a purely compassionate point of view, may seem equally well-justified — as where, for example, an adult child needs but lacks care, yet falls short of having a “disability” *109 within the definition of that term in the ADA and the applicable EEOC regulations. But, given both the plain statutory-language and Congress’s intent as explained in the Senate Report in inserting the limiting phrase “incapable of self-care because of mental of physical disability,” I cannot see how one can contend that the limitation inherent in borrowing from the ADA and its precedent runs counter to the objectives of the FMLA.
I therefore believe that the district court’s analysis and judgment is correct on the facts of this case. The pregnancy-related medical condition of appellant’s daughter lacked sufficient duration to be a “disability” as that term is used within the ADA as further defined by the EEOC regulations. Indeed, my colleagues do not seem to contend otherwise. That should end the matter.
Instead, however, my colleagues insist that because this is an FMLA case, a different, more relaxed durational standard of their own invention needs to be read into the ADA and EEOC criteria. This they term a “balancing” process. But balancing usually means balancing the facts of a case against statutory and regulatory standards, not altering the latter at will. In any case, I see no contradiction between the intent of Congress when using the term “disability” in the FMLA context and the ADA “disability” definition and related EEOC criteria as used in an ADA context. Curiously, my colleagues do not suggest that borrowing the ADA definition of “disability” and related EEOC regulations constituted legal error by the Secretary. They accept the Secretary’s borrowing from the ADA and EEOC but then say the same regulations should mean different things depending on whether used in an ADA case or in an FMLA case. Not only do I find this incomprehensible, but I can see no reason for attempting such an exercise given the close fit, see supra, between Congress’s reasons for using the term “disability” in the FMLA and the meaning of that term as developed in ADA case law.
In taking a different view, my colleagues point only to the FMLA’s broadly stated, and by no means self-explanatory, statutory purpose of balancing family needs with employer interests. But striking the balance so as to favor only persons disabled under ADA criteria appears to meet this very principle given the statutory language and the intent of Congress as set out in the Senate Report. Of course, one may still argue as a matter of personal preference that it would be better to strike the balance differently or more in favor of the family, but it is not our business as judges to choose among competing policies where the statutory text, the legislative history, and the Secretary’s interpretation are all so plainly in accord.
In effect, my colleagues are instructing courts to turn their backs on the Secretary’s entirely rational invocation of the ADA standards — standards which, if applied as construed in ADA cases, reasonably effectuate congressional purpose in using the term “disability” here. The result of the majority’s opinion will be simply to destabilize the meaning of the FMLA in an area requiring clarification, not greater obscurity. The only future guidance the majority gives to litigants and the courts is to “balance” and presumably to follow the majority’s preference for granting leaves liberally to all parents with sick adult children. This approach effectively reads the phrase “incapable of self-care because of ... disability,” as applied solely to adult children, out of the FMLA. I see no proper legal justification for this position.
II.
To be sure, in reversing the district court, the majority says that it does not *110 dispute the Secretary’s importation of the ADA and its concomitant EEOC regulations into the FMLA. The majority says it takes issue only with the district court’s consideration of the EEOC’s interpretive guidance in its analysis of the plaintiffs entitlement to FMLA leave. In particular, the majority contends that it was error for the district court to rely on the EEOC’s interpretive guidance that a “temporary, non-chronic impairment” does not constitute a disability. 29 C.F.R. Pt. 1630, App § 1630(h), at 396. Such reliance was error, says the majority, because the EEOC’s interpretive guidance, issued pursuant to its own regulations promulgated to enforce the ADA, merits no deference in the context of another, distinct statute, such as the FMLA. Ante at 98-99 (citing to classic administrative law jurisprudence, such as Chevron and Skidmore, as modified by recent Supreme Court cases, such as Mead and Christensen). In so holding, the majority seems to imply either that the EEOC’s interpretive rule flies in the face of the FMLA or that absent reliance on the EEOC guidance, the result below would have been different. I see no basis for either position. As already suggested, and as further discussed, the ADA’s dura-tional concepts, as clarified in the EEOC’s interpretive guidance, mesh well with the purpose of the term “disability” as used in this part of the FMLA. Moreover, I fail to see how one can reject the EEOC’s interpretive guidance without also rejecting the ADA or the EEOC’s regulation, both of which the Secretary expressly adopts and which my colleagues do not question.[4] The result of the majority’s opinion, even absent consideration of the EEOC interpretive guidance, is to read out of the Secretary’s and the EEOC’s regulations any requirement that the plaintiff-parent provide some evidence of the duration and long-term impact of their child’s impairment. This, I think, we are not permitted to do. I explain briefly.
Let us assume arguendo, in line with my brethren’s conclusion, that the EEOC interpretive guidance deserves no deference (despite my own belief that utilization of the provision is entirely sound, see supra note 4). The outcome, in my view, would still be to affirm the district court by rely- ' ing solely on the ADA standards and EEOC regulations, the reasonableness of which no one — not even my colleagues-— disputes.
In finding a genuine dispute of fact as to whether Navarro’s daughter is disabled within the meaning of the FMLA (i.e., within the meaning of the ADA minus the EEOC interpretive guidance), the majority argues that the balancing required of the ADA and EEOC factors, see supra note 3, “should not be treated as some mandatory checklist.” Ante at 99-100. From this, the majority explains that the Supreme Court has decided that each factor of the “substantially limits” prong as illuminated *111 by the EEOC “should not be given equal weight.” Ante at 100 (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 481-82, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). In particular, the majority argues that the durational and long-term impact factors (numbers (ii) and (iii) at 29 C.F.R. § 1630.2(j)(2), see supra note 3) should not be accorded “talismanic effect”. As this is so in the ADA context where the label of “disability” is the touchstone for any relief under the statute, it should be even more true, they say, in the FMLA context, given that the FMLA provides only short-term relief and that the term “disability” becomes relevant only with regards to relatively rare cases'in which FMLA leave is requested to care for an adult child. A proper balancing on this record of the EEOC factors in light of the FMLA’s distinct purpose (as compared with the ADA), leads the majority to conclude that a jury could find that Navarro’s daughter is disabled despite the lack of evidence that her impairment would last beyond the three weeks remaining in her pregnancy.
The difficulty with this analysis is that it disregards the ADA’s and the EEOC’s requirement that some consideration be given both to duration and long-term or permanent impact. The plaintiff has pointed to no evidence that would support an inference that Navarro’s daughter would not fully recover upon the birth of her child from her pregnancy-induced hypertension, an impairment that developed in her thirty-sixth week of pregnancy. As was the case, the record shows that plaintiff requested leave on October 14, 1997 to begin on October 25, 1997. Plaintiffs daughter gave birth on October 26, 1997. The only evidence offered by plaintiff in support of her contention that her daughter qualified as disabled under the FMLA was a physician’s certificate wherein her daughter’s doctor certified that “Navarro’s daughter was in her thirty-sixth week of pregnancy, was suffering from high-blood pressure, and had been placed on bed rest so that she could bring her fetus to term, which made her incapable of caring for her two young children.” As the district court stated “[p]laintiff[ ] does not allege that [her] daughter was suffering from high blood pressure throughout much of her pregnancy, or that her condition would have any long-term or permanent impact.” Without more, there is simply not enough evidence to raise a genuine issue of material fact as to the existence of a disability as defined by the ADA, unless, of course, we do not consider duration or long-term impact at all, two of the three factors the ADA’s regulations require a court to consider.
In disregarding these two factors, the majority contends it is merely “balancing” and, in so doing, according little weight to the duration and long-term impact prongs in view of the FMLA’s purpose. With respect, I see no balancing whatsoever in light of the total absence of evidence, as described above, regarding any duration or long-term impact of Navarro’s daughter’s hypertension beyond the three weeks left in her pregnancy. Morever, I see no basis for the court to rely on the FMLA’s broadly stated purposes (e.g., balancing “the demands of the workplace with the needs of families,” 29 U.S.C. § 2601(b)(l)(“Purposes [for the FMLA]”)) as a reason to accord so little weight to two of the three EEOC factors (if any weight could in fact be given on this bare record). The majority is, in effect, using the FMLA’s generally stated aims to overturn what are otherwise the specifics of the operation of the Secretary’s regulation. As noted, however, Congress seems to have used the term “disability” deliberately and precisely to limit in certain respects the granting of parental leaves in situations involving adult children. It is circular reasoning to evade *112 that deliberate limitation, as adduced by Congress and construed by the Secretary, by reference to nothing more than bland and by their nature imprecise statutory objectives.
On this record, applying only the ADA standards and its EEOC regulations and adducing no durational or long-term impact of plaintiffs daughter’s impairment, no reasonable jury could conclude that Navarro’s adult daughter had a “disability” and that Navarro was, therefore entitled to leave to care for her under the FMLA.
III.
As Congress gives the parents of some seriously ill adult children a statutory right to leave (their children having a “disability”), and yet denies leave to other parents of adult children whose situations may be equally disturbing (their children not having a “disability” but being nonetheless seriously ill), any line-drawing in this area will obviously to some degree be discomfiting. Unhappiness over this dilemma seems to be the impetus behind the majority opinion.
As an antidote, my colleagues have created a legal cure that is, in my view, worse than the disease. They have rejected the durational aspects of the ADA definition of “disability”, thus blurring the line drawn in the FMLA between minor children and adult children, a line that Congress itself inserted into the statute. The reasons they offer for doing so are that a strict application of the EEOC factors would, in their opinion, be out of harmony with the general aims of the FMLA and that, under the ADA, the Supreme Court has mandated “balancing.” For the reasons stated in Parts I and II of this dissenting opinion, however, it is by no means obvious that this lack of harmony exists or that a proper balancing does not lead to an affirmance of the district court’s judgment. Congress itself added the disability condition to leaves for parents to care for their adult children, while inserting no such condition limiting the granting of leaves to care for parents, minors or spouses. Compare 29 U.S.C. § 2611(12)(B) (children 18 years of age or older) with 29 U.S.C. § 2611(7) (“Parent”), (12)(A) (children under 18 years of age) and (13) (“Spouse”). Thus, by using the term “disability”, Congress rather clearly intended to place special limits, not imposed for care of other family members, on leaves to provide parental care for children 18 years of age or older— otherwise why require that adult children, but not others, be “incapable of self care because of ... disability” in addition to having a serious health condition which in all other cases would alone justify a leave? See Senate Report, supra. By eviscerating the difference Congress clearly intended there be between leave policy for parents to care for their adult children and leave policy for parents to care for their minor children, my colleagues ignore the strong evidence of the congressional purpose behind the FMLA provision at issue. Consideration of the record in light of the statute and the Senate Report leads, in my mind, to the conclusion that summary judgment was properly granted.
In sum, without much clearer evidence of congressional purpose favoring my colleagues’ position, I see no basis for rejecting a textual reading of the Secretary’s directive — adopting the ADA and the EEOC’s regulations promulgated thereunder' — as the basis for determining whether or not a parent-employee may take leave under the FMLA to care for an adult child. In so saying, I do not wish to imply that, had I been in Congress when the FMLA was enacted, I would necessarily have favored the disability distinction that Congress inserted. As a matter of policy, I might well agree with my colleagues that *113 the current disability yardstick is a rather arbitrary and clumsy way to separate out those adult children entitled to be cared for by their parents under the FMLA from those who are not. But, as judges, our own philosophies and policy-choices are not the issue. The questions here are what Congress wrote, how the Secretary of Labor has exercised her power under the statute, whether what she did was within, her authority, and, finally, whether putting that all together, the district court construed the law properly. I am constrained to believe that the district court did construe the law with total propriety. Indeed, I find it hard to see how the district court could have read the statute and regulations differently. This is not an obscure or ambiguous statute as regards the provision in issue. That seems to me to end the matter, however any one of us might have acted as a member of Congress or the Secretary of Labor.
Unwonted activism in the present appeal not only upsets a district court judgment reached by application of the appropriate and conventional legal rules, it creates a precedent with the potential for serious mischief, since our decision will create confusion as to the relevant standard, while adherence to the Secretary’s directive would not.[5] If Congress were to be persuaded in the future that the Secretary’s interpretation of the Act is too narrow, or that its own language needs enlargement, it can always amend the FMLA; and, of course, the Secretary, too, can rewrite her regulations. These well-established remedies would come too late, to be sure, to assist the present appellant, but I think they better serve the public than a judicial opinion that is sure to create more uncertainty than answers.
I would affirm the district court.

. This is in contrast to the statute's providing leave for spouses to take care of their seriously ill spouse without limitation and for adult children to take care of their seriously ill parent also without limitation. Although some might believe the duty to care for one's adult child should be equal or similar to one’s duty to care for one’s spouse or parent, Congress plainly did not see matters that way.
Congress seemed to have faced something of a dilemma in the case of parental leave for adult children. The statute for the first time forced qualifying employers to grant leave to their employees in order to assist family members. Some members of Congress might have felt that employers should not be forced to grant any leave at all for care of adult children because of the adult child's presumed independence. And, if leave were to be granted, it might be believed that a line should be drawn between those adult children qualifying for parental care and the more usual case of those who should be expected to look elsewhere. The concept of “disability” appears to have been harnessed as a way to resolve this dilemma, the idea being that an adult who is legally disabled (thus having a serious impairment that continues over time) belongs to a more dependent category justifying continuing parental care to the employer's detriment, whereas an adult child who is seriously ill but is not deemed disabled does not.

. The majority misconstrues my position as wanting "to afford coverage only if a child’s disability continues from an early age until after he or she turns eighteen.” While certain language in the Senate Report could lead to that interpretation (e.g., "sl child's need for parental care may not end when he or she reaches 18 years of age”), a more reasonable reading is simply that at the time leave is sought, the child is disabled in the ADA sense, see infra, whether or not continuously disabled.

. The ADA defines disability as, among other things, “a physical or mental impairment that substantially limits one or more of the major life activities of an individual.” 42 U.S.C. § 12102(2)(A). The relevant EEOC regulations state:
The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.
29 C.F.R. § 1630.2(j)(2)(ii), (iii).

. The majority’s holding that the EEOC interpretive guidance deserves no deference, while the Secretary of Labor's regulations (which include her adoption of the EEOC regulations) does deserve deference, makes little sense to me. Although I understand the majority's reasoning, following Mead, that interpretive guidelines of the kind at issue here are often not due anything but Skidmore deference, I see no basis for distinguishing in this case between the EEOC interpretive guidance and the EEOC regulations. If the Secretary had really meant to exclude the former, surely she would have so indicated; nothing in the Secretary’s FMLA regulations suggests such a bizarre separation. Where we all agree to defer to the Secretary’s choice of definitions, taken, in relevant part from the EEOC regulations promulgated under another statute, how can we choose to defer only to her choice of the EEOC regulations and not to its interpretive guidance issued to illuminate those regulations? It seems to me that neither Mead nor Christensen speak to this precise scenario.

. Another reason why I respectfully suggest the majority opinion is ill-conceived is that no party to this case, to my knowledge, has championed the argument or urged the legal position on which the majority opinion rests.